Filed 11/24/15  Smith v. Smith CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| MARY E. SMITH, | D065051 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 37-2011-00065885-CU-PO-EC) |
| GEORGE C. SMITH, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.

Garmo & Garmo, Freddy A. Garmo and Veronica D. Lopez for Defendant and Appellant.

Fickel & Davis, Mary L. Fickel and Richard S. Davis for Plaintiff and Respondent.

Mary E. Smith (Mary) sued her ex-husband, George C. Smith (George), alleging that throughout their eight-year marriage, George "beat, choked, punched . . .  and

otherwise assaulted and battered" her.[1]  When George, then representing himself, failed to appear at trial, the court conducted the trial in his absence.  After hearing Mary's testimony and receiving photographs of her injuries and other evidence, the trial court entered judgment against George for $2 million compensatory and $2 million punitive damages, plus approximately $14,200 in attorney fees and costs.

More than a year later, George filed a motion to vacate the judgment under Code of Civil Procedure[2] section 473(d).  George asserted the judgment was void because (1) he did not receive at least 15 days' advance notice of the trial, a jurisdictional requirement under section 594(a); and (2) the amount of damages exceeded the amount he was notified was at risk, violating due process under *Garamendi v. Golden Eagle Ins. Co.* (2004) 116 Cal.App.4th 694, 705 (*Garamendi*).

The trial court denied George's motion to vacate the judgment.  We affirm because George's motion to vacate was untimely.  Moreover, even if the motion had been timely, substantial evidence supports the court's determination George had actual notice of the trial date and knew the damage potential.

---

[1]    We will refer to Mary Smith and George Smith by their first names in the interests of clarity.

[2]    Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.  When referring to statutory subparts in that code, the word "subdivision" is omitted.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Mary's Lawsuit Against George*

In February 2011 Mary commenced a personal injury action against George alleging domestic violence. Mary alleged that on numerous occasions in her eight-year marriage to George, he "struck with his hands and objects, beat, choked, punched, shoved down stairs, kicked, sat on, threw to the ground and otherwise assaulted and battered" Mary. In particular, Mary alleged that on September 16, 2010, George "shoved" her to the ground "and proceeded to strike and beat her about the head, face and body causing her injury resulting in medical care." Mary's complaint sought compensatory and punitive damages in an unspecified amount "according to proof."[3] Mary also sought an award of attorney fees on her third cause of action for "domestic violence" under Civil Code section 1708.6. Mary did not serve George with a statement of damages or statement of punitive damages. (§§ 425.11; 425.115.)

George answered the complaint, and the case was initially set for a February 2012 trial.[4]

B. *George Is Incarcerated*

A jury convicted George of felony assault with a deadly weapon and corporal injury to spouse. George was incarcerated through April 2012.

_____

[3] Section 425.10(b) prohibits stating the amount of damages demanded in a complaint for personal injury.

[4] The parties did not include George's answer in the clerk's transcript; however, the register of actions shows George filed an answer on March 24, 2011.

In January 2012, while incarcerated, George received an e-mail from his attorney of record in Mary's action, Stephen T. Cummings.[5]  In the e-mail, Cummings told George he is "going to lose the civil case because he was convicted in the criminal case.  The only issue is the amount of damages."  Cummings told George he would "have to pay his wife's attorney fees, general and potentially punitive damages when they win."  Cummings urged George to "settle the case for $37,500 and move on."  Cummings reminded George trial had been set for "February 2" and told George he would "advise the court at the March hearing" that George would be released in April and "request that any trial not be set until May."[6]

C.  *George's Trial Counsel Is Relieved as Counsel of Record and Mails George the Order Continuing Trial to June 8, 2012*

On March 2, 2012, the trial court granted Cummings's motion to be relieved as counsel of record *and* in the same order continued the trial date to June 8, 2012.  The court ordered Cummings to serve George with a copy of the order at George's last known address, the George Bailey Detention Facility.

On March 7, 2012, Cummings served George with the order by mail.  The proof of service shows mail to the following address:  "George Charles Smith[,] Booking # 11187568[,] 5C-246, George Bailey Detention Facility[,] 446 Alta Rd., Ste 5300, San

---

[5]     George attached this e-mail as an exhibit to his declaration filed with his motion to vacate the judgment.

[6]     The register of actions shows that on January 10, 2012 (three days before Cummings's e-mail), the trial court continued the trial to March 2, 2012.

Diego CA 92158." George concedes this is the correct mailing address for him while he was incarcerated.

On the first page of this order, in an area under the case number, are preprinted spaces for listing the hearing date, department, judge, date "action filed" and "trial date." Next to "trial date" the word "None" was typed. However, the next page, which contains the text of the order, states: "The trial in this action or proceeding: [¶] . . . [¶] is set for Friday, June 8, 2012 at 1:30pm in Department 14 - East County Division."

On March 2, 2012, later in the day after the court granted his order and continued the trial, Cummings realized the "None" next to "trial date" on page 1 of the order was a mistake. Cummings tried to correct it the same day by filing a revised order with "June 8, 2012" next to the preprinted "trial date" on the first page of the order. Cummings accompanied the corrected order with a cover letter addressed to the court clerk, explaining he had modified the order "to reflect what occurred" at the hearing. However, the clerk refused to accept the corrected order because by then, the judge had already signed the incorrect one.

George admits receiving this order—dated March 2, 2012 and stating on page 2 that trial was set for June 8, 2012—in March 2012 while he was incarcerated.

D. *The Clerk Sends George Notice of the June 8, 2012 Trial Date*

On March 5, 2012, the clerk issued a "Notice of Rescheduled Hearing" stating trial was set for June 8, 2012, at 1:30 pm in Department E-14. The clerk's certificate of service by mail states this was mailed on March 5, 2012 to: "George C. Smith C/O: George Bailey Detention Facility[,] BKG#111[,] 446 Alta Road #5300[,] San Diego, CA

5

92158."  The address truncated George's booking number from 11187568 to "BKG#111" and entirely omitted his housing unit, 5C-246.  In all other respects the address was correct and complete.

E.  *George Is Released from Prison*

George was released from prison on April 25, 2002.

F.  *Trial*

On June 5, 2012, Mary's attorneys filed a trial brief, exhibit and witness list, and request for judicial notice.  Mary's attorneys purported to serve George with these documents by mail at George's home address in Alpine, California.  However, the proof of service shows the documents were mailed to the zip code for Lakeside (92040), not Alpine (91901).  George states he never received these documents.

The court called the case for trial on June 8, 2012.  George did not appear.  The court held the trial in his absence.

There is no reporter's transcript.  The clerk's minutes state the trial court took judicial notice of George's criminal conviction, Mary testified, and the court received in evidence photographs of Mary's injuries and documentary evidence.

The court ruled that judgment should be entered in Mary's favor for $2 million noneconomic damages, $2 million punitive damages, $13,245 attorney fees, and $974.50 costs.  On June 28, 2012, the court entered judgment against George for $4,014.219.50.

G.  *George's Motion To Vacate Judgment*

On September 25, 2013—more than a year later—George, now represented by new counsel, filed a motion to vacate the judgment.  George claimed he did not know

6

judgment had been entered until he received a letter from Mary's collection attorneys in March 2013. George's attorneys asserted the judgment was "void" because (1) George "never received adequate notice of the trial" in violation of section 594, and (2) the judgment "far exceeded the amount that [George] had been notified was at risk."[7]

On the first issue (notice of trial), George's lawyers asserted the only notice of trial properly addressed to George while he was incarcerated was the order sent by Cummings's office—but that order was self-contradictory, asserting on the first page there was no trial date, yet stating on the second page trial was set for June 8. In his declaration, George admitted receiving this order, but stated he did not notice the trial date.

Although the clerk also sent notice of the rescheduled trial date, George's attorneys asserted it was incorrectly addressed (and therefore never delivered) because it contained an incomplete booking number and no housing unit number. In his declaration, George attached a sheriff's department information sheet about how to properly address mail to inmates. The copy of the document George attached to his declaration states inmate mail must include the inmate's name *and* booking number. George stated in his declaration he did not receive the clerk's notice of rescheduled hearing.

---

[7] Section 594(a) provides in part: "[I]n the absence of the adverse party . . . if the issue to be tried is an issue of fact, proof shall first be made to the satisfaction of the court that the adverse party has had 15 days' notice of such trial . . . ."

Section 594(b) provides in part: "If notice is served by the clerk, proof thereof may be made by introduction into evidence of the clerk's certificate . . . . If notice is served by a party, proof may be made by introduction into evidence of an affidavit or certificate . . . ."

Regarding the amount of the judgment, George's declaration stated there had been pretrial settlement discussions in the amounts of $37,500 and $50,000. The $50,000 offer, which George rejected, provided for monthly payments with a stipulation for entry of a $250,000 judgment upon default. On appeal, George's attorney states George "reasonably thought that, based on the settlement negotiations, there was a possibility of a judgment in the range of $250,000."

H. *Mary's Opposition To Motion To Vacate*

Mary's opposition argued George's motion was untimely because after six months a trial court may grant a motion to vacate a judgment only if the judgment is void "on its face." Mary's attorneys asserted the judgment was not void on its face because the judgment roll revealed no jurisdictional defects.

On the merits, Mary's attorneys asserted George conceded he received the order relieving Cummings as counsel, which also continued trial to June 8, 2012. Mary's attorneys also filed the declaration of Duane K. Dubbs III, an administrative deputy at the George Bailey Detention Facility. Dubbs stated, "[i]ncoming mail that has the correct inmate name, but that is missing or has an incomplete housing unit number or inmate booking number, will still be delivered to the inmate, although there may be a delay in delivering the mail to the inmate." He added, "Although the housing unit number, and/or booking number may be helpful in locating an inmate, ninety-nine percent of the time the inmate is located by his/her name."

8

Mary's attorneys also noted that the sheriff's mailing information George attached to his declaration had been tampered with.  The sentence in the mailing information is as follows:

"Address the envelope as follows:  [¶] . . .

TO: Inmate's full name, booking number        and detention facility address

As is readily apparent, there is a blank space, as if there has been an erasure or white-out of text, between the phrase "booking number" and "and detention facility address."

In an attempt to discern what words, if any, were once written in that blank space, Mary's attorneys noted a Spanish translation of the English is immediately below the English.  The Spanish translation does not contain any blank space between the words, and it reads:

"PARA: El nombre del encarcelado, su numero de carcel, *si lo sabe*, y la direccion de la carcel."  (Italics added.)

A comparison of the English and Spanish shows the missing words in the English are: "si lo sabe," which is translated "if known."

From this, Mary's attorneys argued the inescapable inference is the English originally read:  "Inmate's full name, booking number *if known*, and detention facility address."  (Italics added.)  The exhibit George's declaration states is "a true and correct copy of San Diego Sheriff's Department's instructions on how to send mail to inmates" was apparently tampered with to make it appear that mail would not be delivered without a booking number.  Not coincidentally, an incomplete booking number is the only defect

9

in the proof of service for the notice of rescheduled hearing the clerk mailed to George on March 5, 2012, informing him of the June 8, 2012 trial date.

With respect to George's argument on damages, Mary's attorneys asserted George knew the severity of Mary's injuries, and therefore the potential risk for him in this case, since he inflicted eight years of "brutal beatings" with his own hands and weapons.

I. *The Court Denies George's Motion To Vacate*

The trial court denied George's motion to vacate the judgment. The court "found the declaration of Duane Dubbs credible and determined that [George] had received proper notice of the trial date."

DISCUSSION

I. *THE STANDARD OF REVIEW*

We review de novo a trial court's determination whether a judgment is void under section 473(d). (*Cruz v. Fagor America, Inc.* (2007) 146 Cal.App.4th 488, 495–496.) However, to the extent the ruling is based on the resolution of disputed facts, we defer to the trial court's factual determinations "when the evidence is in conflict, whether the evidence consists of oral testimony or declarations." (*Ramos v. Homeward Residential, Inc.* (2014) 223 Cal.App.4th 1434, 1441 (*Ramos*).)

II. *THE MOTION TO VACATE WAS UNTIMELY*

George brought his motion to vacate more than a year after judgment was entered. "Where, as here, a motion to vacate is made more than six months after entry of a judgment, a trial court may grant a motion to set aside that judgment as void only if the judgment is void *on its face*." (*Ramos*, *supra*, 223 Cal.App.4th at p. 1440, italics added;

10

*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 19.)

""""A judgment or order is said to be void on its face when the invalidity is apparent upon an inspection of the judgment roll."""" (*Ramos, supra,* 223 Cal.App.4th at p. 1440.)

The judgment roll is limited to certain documents. (§ 670.) In this case, where defendant filed an answer, the judgment roll consists of "the pleadings . . . [and] the judgment." (§ 670(b).)[8] "Pleadings" means "complaints, demurrers, answers, and cross-complaints." (§422.10.)

In this case, determining whether the judgment is void under section 594 cannot be determined by scrutinizing the judgment roll or even other documents in the superior court record.[9] Determining whether George received legally adequate notice of trial under section 594 and/or had actual notice of the trial date requires additional evidence beyond the judgment roll. This additional evidence includes (1) the order granting

---

[8]    When an answer has been filed in a case, the judgment roll consists of "the pleadings, all orders striking out any pleading in whole or in part, a copy of the verdict of the jury, the statement of decision of the court, or finding of the referee, and a copy of any order made on demurrer, or relating to a change of parties, and a copy of the judgment; if there are two or more defendants in the action, and any one of them has allowed judgment to pass against him or her by default, the summons, with proof of its service, on the defendant, and if the service on the defaulting defendant be by publication, then the affidavit for publication, and the order directing the publication of the summons." (§ 670(b).)

[9]    Although not cited by the parties, in *Hayashi v. Lorenz* (1954) 42 Cal.2d 848, 851, the Court stated, "[A] judgment or order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion at any time after its entry . . . ." To the extent *Hayashi* is read as holding facial invalidity can be shown from an examination of not only the judgment roll, but also the rest of the court file, George's motion still is untimely because his claim the judgment is void requires examining declarations and other evidence outside the record.

11

Cummings's motion to be relieved as counsel and continue the trial date, (2) the notice of rescheduled hearing the clerk mailed to George with its proof of service, (3) assertions of fact in George's declaration regarding his nonreceipt of notice, (4) Cummings's e-mail to George; and (5) Dubbs's declaration.

Similarly, determining whether the judgment is void on the grounds the $4 million awarded violates due process also requires evidence outside the judgment roll. On this issue, it is significant that the judgment against George was not taken by default. Rather, he had an answer on file, which was never stricken, and the trial occurred in his absence. George was not defaulted; rather, the trial was uncontested. (*Garamendi, supra,* 116 Cal.App.4th at p. 705 [distinguishing default from an uncontested trial].)

This distinction between a default and an uncontested trial is significant because in the uncontested trial, damages were properly entered upon Mary's proof and were not limited to those demanded in the complaint. (§ 580 [where there is an answer, "the court may grant the plaintiff any relief consistent with the case made by the complaint and embraced within the issue"]; *Garamendi, supra,* 116 Cal.App.4th at p. 705.) The rule that a default judgment entered without a statement of damages is void on its face, allowing it to be vacated beyond the six-month limitation period in section 473 (*Plotitsa v. Superior Court* (1983) 140 Cal.App.3d 755, 760) does not apply here for the simple reason there was no default judgment entered against George.

George contends the judgment is void to the extent the damages awarded exceed what he was notified was his litigation risk. (*Garamendi, supra,* 116 Cal.App.4th at p. 706.) George argues the absence of a statement of damages, coupled with the settlement

12

discussions in the realm of $37,500, $50,000 and $250,000 did not give notice of a potential $4 million judgment. In part IV we explain why we reject this argument on its merits. Here, however, on the issue of timeliness, it suffices to observe that merely stating the issue demonstrates it cannot be resolved on the judgment roll, but rather depends on considering extrinsic evidence, such as settlement discussions.

Because George cannot establish this judgment is void *on its face*, a motion to vacate the judgment under section 473(d) must have been made within six months after entry of judgment. (*Ramos, supra,* 223 Cal.App.4th at p. 1440; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 ["Once six months have elapsed since the entry of a judgment, a trial court may grant a motion to set aside that judgment as void only if the judgment is void on its face."].)

Here, the court entered judgment on June 28, 2012. George's motion to vacate the judgment was filed on September 25, 2013, which is 15 months after entry of judgment. Therefore, the trial court properly denied George's motion because it is untimely.

III. *GEORGE RECEIVED ACTUAL NOTICE OF THE TRIAL DATE*

Section 594(a) prohibits trial of an issue of fact in the absence of the defendant unless the defendant had 15 days' notice of the trial. Compliance with the 15-day notice requirement is mandatory and jurisdictional. (*Au-Yang v. Barton* (1999) 21 Cal.4th 958, 963.) A judgment entered following a trial conducted in violation of the notice requirement is void. (*Urethane Foam Experts, Inc. v. Latimer* (1995) 31 Cal.App.4th 763, 767.)

13

Section 594(b) requires a party to enter into evidence such notice of trial. (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 54.) However, compliance with the statutory *manner* of proving notice was given is not jurisdictional, but rather is subject to a harmless error analysis. (*Id.* at p. 58 [in marital dissolution proceeding where husband's counsel was given notice of trial, and proof of service appeared in record, failure to introduce notice into evidence at trial conducted in husband's absence was harmless error].)

Even if George had made a timely motion to vacate, his contentions would still fail because the trial court's finding he had actual notice of the trial date is supported by substantial evidence. Actual notice for the required 15-day period is sufficient to comply with section 594(a). (7 Witkin, Cal. Procedure (5th ed. 2008) Trial, § 77, p. 103; *Bird v. McGuire* (1963) 216 Cal.App.2d 702, 714.) And, as noted, if the record shows the defendant received actual notice, any failure to introduce the proof of service into evidence as required by section 594(b) is harmless.[10]

Substantial evidence supports the trial court's finding George "received proper notice of the trial date." On March 5, 2012, the clerk mailed to George a document entitled "Notice of Rescheduled Hearing." That notice states a "civil court trial" is scheduled for June 8, 2012. The proof of service shows this document was mailed,

---

[10]    Because there is no reporter's transcript or detailed clerk's minutes of the trial, the record does not indicate whether Mary's trial counsel offered the clerk's notice of trial into evidence.

14

addressed to "George C. Smith" at the "George Bailey Detention Facility[,] BKG# 111[,] 446 Alta Road #5300[,] San Diego, CA 92158."

In his motion to vacate, George's attorney argued this notice was ineffective under section 594(a) because the document was improperly addressed—the booking number was incomplete and the address did not include George's housing unit (5C-246). Moreover, George stated in his declaration he never received this document.

However, the trial court was entitled to, and did, disbelieve both of these assertions. The sheriff's information George attached to his declaration does not require the housing unit to be stated in the address. Moreover, as discussed, the booking number is optional, to be provided only "if known." The notice, served by mail in the manner described in section 1013a, is presumed to have been received. (Evid. Code, § 641.) The trial court was entitled to disbelieve George's self-serving declaration he never received it. Dubbs stated 99 percent of the time mail is properly delivered at George Bailey based on the inmate's name alone. The trial court expressly stated it found Dubbs's declaration was credible. Standing alone, this is substantial evidence supporting the trial court's finding George received actual notice of the trial date in compliance with section 594(a).

Moreover, George also received notice in a second document. George concedes receiving the March 2, 2012 order granting Cummings's motion to be relieved as counsel, which was mailed to George on March 7, 2012. Page 2 of that order states: "The trial in this action or proceeding [¶] . . . [¶] is set for Friday, June 8, 2012 at 1:30pm in Department 14 - East County Division." Although the caption on page 1 states: "trial date: None," even viewing this discrepancy in the light most favorable to George, this

15

simply created an ambiguity that any reasonable person concerned with protecting his right to appear at trial would have inquired to resolve.

However, George did nothing to protect his own rights. Instead of asking his former lawyer, Cummings, about the trial date, or contacting the court to clarify any confusion about the trial date, George did nothing to learn about the status of his case from the date he was released from prison in April 2012 until March 2013 when Mary's lawyers demanded he pay the judgment. George was represented by counsel when the initial trial date was set for February 2012.[11] After a party receives notice of the initial trial date, he acts at his own peril in failing to keep himself informed of changes in the trial date through diligent inquiry. (*People ex rel. San Francisco Bay Conservation etc. Com. v. Smith* (1994) 26 Cal.App.4th 113, 127.)

## IV. *NO DUE PROCESS VIOLATION*

Where a defendant files an answer but fails to appear for trial, the judgment may not exceed the amount the defendant had been given notice was at risk in the litigation through the complaint, discovery, or other information. (*Garamendi, supra,* 116 Cal.App.4th at p. 706.) To the extent the judgment exceeds this amount, the judgment is void. (*Id.* at p. 705.)

George contends the $4 million judgment violates due process because it is "8,000%" higher than the pretrial settlement offers, and "1,600%" higher than the

---

[11] The register of actions shows that at the case management conference in September 2011, the court set a trial date for February 3, 2012. The e-mail Cummings sent to George while George was in prison also refers to this February 2012 trial date.

16

stipulated "default judgment" of $250,000.  George's attorneys cite two unpublished

appellate cases as purported authority for finding a due process violation under similar

circumstances.

We are not persuaded.  Subject to limited exceptions not applicable here,

unpublished California Court of Appeal opinions cannot be cited.  (Cal. Rules of Court,

rule 8.1115(a), (b).)  Improper citation of an unpublished opinion in an appellate brief

may cause the court to return or strike the brief as defective.  In egregious cases, the

practice may lead to monetary sanctions.  (*Alicia T. v. County of Los Angeles* (1990) 222

Cal.App.3d 869, 885-886.)

George's lawyers assert the unpublished opinions are citable under the doctrine of

"law of the case."  This assertion is incorrect.  The cited unpublished cases have no law of

the case impact here because they involve different parties in completely unrelated cases.

(See generally *People v. Barragan* (2004) 32 Cal.4th 236, 246 [explains law of the case].)

The trial court's finding that George had sufficient notice of the damage exposure

in this case is supported by substantial evidence.  Mary's complaint alleged the following

heinous conduct by George:

> "On September 16, 2010, George C. Smith assaulted and battered his
> wife of eight (8) years . . . .  [He] shoved Mary E. Smith to the
> ground, and proceeded to strike and beat her about the head, face
> and body . . . ."

> "Throughout the eight (8) years preceding September 16, 2010,
> Defendant George C. Smith struck with his hands and objects, beat,
> choked, punched, shoved down stairs, kicked, sat on, threw to the
> ground and otherwise assaulted and battered Mary E. Smith on
> numerous occasions resulting in injuries and medical care."

17

At trial, the court received in evidence photographs depicting the injuries George inflicted on Mary during the September 2010 beating. We have examined the photographs of Mary's injuries received in evidence, which depict significant injury around her neck, and they support the trial court's determination of the seriousness of Mary's injuries.

George knew of Mary's allegations and the physical and psychological damage he inflicted on her. He inflicted those injuries with his own hands and weapons. The relatively low pretrial settlement amounts obviously reflect practical difficulties in collecting a judgment of this nature, and are not an accurate reflection of the extent of Mary's physical injuries and related general damages. The award of attorney fees was modest and Mary's complaint notified George reasonable attorney fees would be sought for domestic violence under Civil Code section 1708.6, subdivision (c).

## DISPOSITION

The order is affirmed. Mary is entitled to costs on appeal.

NARES, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.

18